**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF ILLINOIS, EASTERN DIVISION**

| | | |
|---|---|---|
| KIRBY SMITH, | ) | |
| | ) | |
| Plaintiff, | ) | No. 20 cv 1166 |
| | ) | |
| v. | ) | Judge Martha M. Pacold |
| | ) | |
| YELP INC., | ) | Magistrate Judge Maria Valdez |
| | ) | |
| Defendant. | ) | |

**DEFENDANT YELP INC.'S MEMORANDUM IN SUPPORT OF ITS RULE 12(b)(6) MOTION TO DISMISS PLAINTIFF'S COMPLAINT**

Plaintiff Kirby Smith's barebones and muddled effort to state a claim deserves only one result: dismissal with prejudice. The pleading rests on conclusory statements of fact, legal conclusions, and gaps in essential elements needed to state a claim. Indeed, it is not even clear exactly what claim that plaintiff is pursuing. The one count complaint makes a stab at wrongful termination, citing the Family and Medical Leave Act of 1993, 29 U.S.C. § 2601, *et seq*. ("FMLA") (Count I). But the complaint lacks facts to plead the required element of causation and fails as a matter of law on that basis alone. Ironically, the complaint itself alleges the reason why plaintiff was terminated: she sent text messages to a Yelp employee threatening physical harm against two other Yelp employees—among others. The fact that she was on FMLA leave when she texted those threats, and was terminated for sending them, does not rise to the level of stating a claim for FMLA retaliation.

Apart from the FMLA count, plaintiff's Initial Status Report told this Court that she was asserting a claim for "violation of the ADA" (Americans with Disabilities Act (ADA), 42 U.S.C. § 12101, *et seq.*), and claims for "retaliatory discharge, unlawful discharge, [and] racial

discrimination." (Dkt. 12, Pl. Initial Status Report, at 1(c)). But plaintiff also misses the mark on these other purported claims, with a complaint that lacks any facts regarding disability or race, much less a state law basis for retaliatory or unlawful discharge. For these reasons, the entire complaint should be dismissed.

## FACTS RELEVANT TO THIS MOTION TO DISMISS

Plaintiff resides in Cook County. (Dkt. 2, Cplt., ¶ 12). She worked for Yelp in Chicago as a Junior Account Executive from Feb. 5, 2018 through May 3, 2019. (*Id*., ¶ 2).

On January 17, 2019, plaintiff requested paid time off ("PTO"). (*Id.* ¶ 6). Plaintiff's PTO request was denied because she had already used all of her available PTO. (*Id.* ¶¶ 6, 20). After the denial, plaintiff applied for a medical leave of absence under the FMLA to be taken from March 11, 2019 through June 2, 2019. (*Id*. ¶¶ 7, 20, 24). Defendant Yelp approved plaintiff's request for FMLA leave. (*Id*. ¶ 7).

Plaintiff took FMLA leave beginning March 11, 2019. (Cplt. ¶ 8). On April 16, 2019, plaintiff went to Thailand on vacation. (*Id*.). Yelp received photos of Ms. Smith on that vacation in Thailand from a Yelp employee. (*Id.* ¶ 22). After Yelp received plaintiff's vacation photos, plaintiff sent text messages to a coworker in which she threatened another Yelp employee. (*Id.*).

Specifically, on April 23, 2019, a Yelp employee, Shaina, received text messages from the plaintiff in which plaintiff threatened violence against two other Yelp employees, Madeline and Faye.[1] (Shaina and Faye have since left Yelp.) Plaintiff also threatened violence against Faye's

---

[1] A copy of the text messages is attached to Exhibit A, Declaration of Lauren Herzog, which attests to the receipt by Yelp of the texts. For purposes of this motion to dismiss, the actual language of plaintiff's texts are treated as part of the complaint. *See e.g.*, *Menominee Indian Tribe of Wis. v. Thompson*, 161 F.3d 449, 456 (7th Cir. 1998) (documents attached to a motion to dismiss are deemed part of the pleadings if they are referred to in the plaintiff's complaint and are central to his claim); *Wright v. Associated Ins. Cos*., 29 F.3d

fiancé (not a Yelp employee).[2] *Id.* In her text messages, plaintiff Smith threatened to harm these individuals. Plaintiff's text messages included the following statements:

- "I'm selling tickets to a one hitter quitter boxing match!! Me and Madeline. Omg if and when I see her I'm punching her ass onsite."
- "She always said slick shit to me at work and I always wanted to[] punch her ass."
- "IT WAS Fayes fiance, Maira told me, guess what, they live across the street from me, should I hit Faye her Fiance or both when I see them."
- "don't fuck wit me and my money bc you gunna get that hood [n*] Jai" [*racial slur has been removed from this brief, it is in the text copies attached to this Motion][3].
- "Faye and Madeline fucked up. Imma keep quiet, I'm not gunna let them know".

Yelp attempted to investigate these threatening text messages and made several efforts to contact plaintiff over a five day period from April 29, 2019 through May 3, 2019. (Cplt. ¶ 23). The complaint says nothing about plaintiff responding to any of Yelp's efforts—because in the one instance that Yelp representatives were able to reach plaintiff, plaintiff hung up on them.

After these events took place, Yelp terminated plaintiff's employment on May 3, 2019. (*Id.* ¶¶ 4, 22). The complaint references an EEOC "final determination letter" and that the notice

---

1244, 1248 (7th Cir. 1994) (same); *Adams v. City of Indianapolis*, 742 F.3d 720, 729 (7th Cir. 2014) ("It is . . . well-settled in this circuit that 'documents attached to a motion to dismiss are considered part of the pleadings if they are referred to in the plaintiff's complaint and are central to his claim.'"2). See also Argument Section I.B below.

[2] In the interests of protecting their privacy, Yelp submits only the first names of plaintiff's targets.

[3] As stated in Exhibit A, Declaration of Lauren Herzog, Plaintiff went by the first name "Jai" while she worked at Yelp.

informed the plaintiff of her right to sue within 90 days of its determination. (Cplt. ¶ 9). There is no allegation about when the 90-day period started.

The complaint's single count is entitled "Wrongful Termination." Plaintiff fails to allege any specific federal or state law on which that count rests, but does cite the FMLA (Cplt. ¶¶15, 18) and refers to "retaliation." (*Id.* ¶¶ 15-17). Plaintiff also provided the Court with an Initial Status Report before Yelp's first appearance. (Dkt. 12). In her Status Report, plaintiff states that she is alleging "retaliatory discharge, unlawful discharge, racial discrimination, violation of FMLA, and violation of the ADA." (*Id.,* at 1(c)). None of these purported claims has been properly pleaded in the complaint.

**STANDARD FOR A MOTION TO DISMISS PURSUANT TO RULE 12(b)(6)**

Under Fed. R. Civ. P. 12(b)(6), a complaint must contain fact allegations that "'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). In *Twombly*, 550 U.S. at 555 n. 3, the Supreme Court held that Fed. R. Civ. P. 8(a)(2) requires a factual "'showing' rather than a blanket assertion of relief." *Id.* (quoting Fed. R. Civ. 8(a)(2)). A "formulaic recitation of the elements of a cause of action will not do." *Twombly*, 550 U.S. at 555. Pleading a complaint "demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation." *Id*. Where "facts" in a complaint are legal conclusions or elements of the cause of action, they may be disregarded on a motion to dismiss. *McCauley v. City of Chicago*, 671 F.3d 611, 616-17 (7th Cir. 2011).

In ruling on a motion to dismiss, "courts must accept a plaintiff's factual allegations as true, but some factual allegations will be so sketchy or implausible that they fail to provide sufficient notice to defendants of the plaintiff's claim." *Brooks v. Ross*, 578 F.3d 574, 581 (7th

Cir. 2009). Factual allegations are not adequate when they are "abstract recitations of the elements of a cause of action or conclusory legal statements." *Id.*

In addition, plaintiff's text messages are considered part of the pleadings for purposes of this motion to dismiss. *See Menominee Indian Tribe of Wis. v. Thompson*, 161 F.3d 449, 456 (7th Cir. 1998) (documents attached to a motion to dismiss are deemed part of the pleadings if they are referred to in the plaintiff's complaint and are central to his claim); *Wright v. Associated Ins. Cos.*, 29 F.3d 1244, 1248 (7th Cir. 1994) (same); *Adams v. City of Indianapolis*, 742 F.3d 720, 729 (7th Cir. 2014) ("It is . . . well-settled in this circuit that 'documents attached to a motion to dismiss are considered part of the pleadings if they are referred to in the plaintiff's complaint and are central to his claim.'"); *188 LLC v. Trinity Indus., Inc.*, 300 F.3d 730, 735 (7th Cir. 2002) ("Because [Defendant] attached a copy of the release to its motion to dismiss, and because [Plaintiff's] complaint repeatedly referenced the release, it was proper for the district court to consider the text of the release in dismissing this case."). The text messages are specifically pleaded in the complaint (Cplt. ¶¶ 21, 22, 23) and central to plaintiff's claim of FMLA retaliation. Plaintiff will need to show that Yelp terminated her because she took FMLA leave, and not because of her threatening text messages. As shown below, however, even without consideration of the specific text messages shown in Exhibit A, plaintiff's allegations fail to state a cause of action and the complaint should be dismissed.

## ARGUMENT

### I. Count I For Wrongful Termination Should Be Dismissed Because Plaintiff Fails To Plead The Required Elements Of An FMLA Claim.

A claim under the FMLA for wrongful termination can be brought on a theory of either (a) interference with an individual's rights under the FMLA or (b) retaliation for exercising those rights. *See Ames v. Home Depot U.S.A., Inc.*, 629 F.3d 665, 668-670 (7th Cir. 2011) (affirming

summary judgment on both FMLA interference claim and retaliation claim). Here, plaintiff fails to plead facts supporting either theory and accordingly, Count I fails as a matter of law.

**A. Count I Fails To Plead FMLA Interference.**

"To plead an [FMLA] interference claim, a plaintiff must show that (1) she was eligible for FMLA protection; (2) her employer was covered by the FMLA; (3) she was entitled to take leave under the FMLA; (4) she gave her employer sufficient notice of her intent to take leave; and (5) her employer denied FMLA benefits to which she was entitled. *See, e.g., Righi v. SMC Corp*., 632 F.3d 404, 408 (7th Cir. 2011); *Mattern v. Panduit Corp*., 2011 U.S. Dist. LEXIS 118057, *20 (N.D. Ill 2011). In *Mattern*, plaintiff's FMLA claim was dismissed in a situation where the employer granted plaintiff's request for FMLA leave, plaintiff took FMLA leave, but plaintiff was terminated before she came back from FMLA leave. Importantly, the *Mattern* plaintiff was not *denied* FMLA benefits at any time during her employment. *Id.* That is exactly the situation here. Plaintiff plainly alleges that she asked for and received FMLA leave. Only much later, after plaintiff was on FMLA leave for almost two months, was plaintiff's employment terminated – not because she took FMLA leave but because of the threats she made, in writing, against two Yelp employees. Therefore, plaintiff did not and cannot state a claim for FMLA interference.

**B. Count I Fails To Plead FMLA Retaliation.**

Plaintiff has failed to allege an FMLA retaliation claim. To do so requires pleading that the plaintiff (1) engaged in statutorily protected activity, (2) suffered an adverse action, and (3) the protected activity caused the adverse action – the retaliation component. *Ames v. Home Depot U.S.A., Inc*., 629 F.3d 665, 670 (7th Cir. 2011). Here, under the standard for a motion to dismiss, plaintiff has pleaded the first element, that she "engaged in statutorily protected activity" when she took medical leave pursuant to the FMLA (Cplt. ¶ 18), and the second element, that she was

terminated. (*Id.* ¶ 19). But plaintiff did not plead the required causal connection between her FMLA leave and her termination. Nor could she, because it was plaintiff's own conduct – her threats of violence against co-workers – that caused her termination.

To show a causal nexus between a protected activity and an adverse employment action, a plaintiff must allege either direct facts or circumstantial evidence of retaliatory or discriminatory intent. *Carter v. Chicago State Univ.,* 778 F.3d 651, 657 (7th Cir. 2015). It is not enough to assert, as plaintiff does here, the bare conclusion that her "vacation to Thailand motivated Yelp's decision to terminate her" and that Yelp's "haste [sic] decision to terminate Ms. Smith supports the inference that the co-worker's allegations were taken for face value by the company." (Cplt. ¶ 22). A properly alleged causal connection includes either direct evidence, such as a direct admission from defendant, or circumstantial evidence, which is typically some type of oral or written statement from the employer evidencing retaliatory intent, or some type of suspicious timing. 778 F.3d at 657 (circumstantial evidence may include suspicious timing, ambiguous oral or written statements, or behavior toward, or comments directed at, other employees in the protected group).

In the absence of alleging direct or circumstantial facts, an FMLA retaliation claim must be dismissed. *See Carter,* 778 F. 3d 651 (affirming summary judgment where plaintiff produced no direct evidence of retaliatory intent because suspicious timing alone was not sufficient and no indirect evidence of retaliatory intent where he could not produce evidence of similarly situated individuals being treated better than him); *Johnson v. Cent. States Funds*, 2014 U.S. Dist. LEXIS 104445, *9 (N.D. Ill. 2014) (dismissing FMLA retaliation claim where plaintiff did not allege any discriminatory or retaliatory intent on the employer's part and several months passed between time of FMLA leave and adverse employment action).

Here, plaintiff's allegations show neither direct nor circumstantial evidence of retaliatory intent. Yelp freely allowed plaintiff to take FMLA leave. Almost two months *after* plaintiff's leave began, Yelp terminated plaintiff. Plaintiff herself pleads that that termination occurred only after Yelp learned of plaintiff's threatening text messages, and when Yelp attempted to discuss the texts with plaintiff, she rebuffed each and every one of Yelp's attempts. These circumstances do not give rise to an inference that plaintiff's use of FMLA leave caused her termination. The time gap alone is enough to cut off any causal inference, and in addition it is clear that plaintiff's own threatening conduct left Yelp no choice but to terminate her. While plaintiff speaks of a "co-worker's allegations" (Cplt. ¶ 21), she ignores her own pleading, and that she repeatedly threatened violence against her Yelp co-workers and one co-worker's fiancé. Copies of the actual texts that plaintiff sent, shown in Exhibit A, simply reinforce the point: there is no direct or circumstantial evidence of retaliatory intent.

In the same vein, no retaliatory intent can be discerned from plaintiff's assertion that the "vacation to Thailand motivated Yelp's decision to terminate her." (Cplt. ¶ 22). To state an FMLA retaliation claim, plaintiff's activity must be "statutorily protected." *Ames*, 629 F.3d at 670. Taking a vacation, however, is not protected by the FMLA, and plaintiff offers no citation to the FMLA to support that assertion. In any event, Yelp did not disturb plaintiff's FMLA leave until it learned that plaintiff had threatened two Yelp employees, among others. Only at that time, and only after attempting to contact plaintiff for five straight days without success, did Yelp terminate the plaintiff's employment.

Nor can plaintiff find refuge in the notion that the FMLA imposes on an employer a "duty to investigate and failure to conduct a thorough investigation into whether an employee was engaged in a protected activity before imposing discipline falls short of an employer's duty," (Cplt.

¶ 21, citing 29 CFR § 825.220). The FMLA creates no such duty, and §825.220 simply does not say what plaintiff alleges. Plaintiff's pleading of "insufficient investigations" (Cplt. ¶ 21) is not a factor under §825.220. In any event, plaintiff herself pleads that Yelp attempted to investigate the threatening texts by trying to contact plaintiff several times over a five day period from April 29, 2019 through May 3, 2019. (Cplt. ¶ 23). The complaint says nothing about plaintiff responding to any of those attempts (nor could she make such allegations).

Federal statutes protecting employees from discrimination, such as the FMLA, are not a free pass to threaten violence. "The FMLA was designed to help working men and women balance the conflicting demands of work and personal life, it was not intended to excuse violence in the work place." *Anders v. Waste Mgmt. of Wis., Inc*., 463 F.3d 670, 678 (7th Cir. 2006) (affirming summary judgment for the employer when it terminated an employee who threatened violence against his supervisor, even though he was on FMLA leave at the time). *See also Palmer v. Circuit Court*, 117 F.3d 351, 352 (7th Cir. 1997) ("The [ADA] does not require an employer to retain a potentially violent employee. Such a requirement would place the employer on a razor's edge – in jeopardy of violating the Act if it fired such an employee, yet in jeopardy of being deemed negligent if it retained him and he hurt someone."). As these cases show, Yelp had no obligation to allow a potentially violent employee, like plaintiff here, to return to the workplace. Such a result would violate any notion of protecting employees from workplace violence.

**C. Count I's Random Allegations Do Not Amount To A State Law Claim For "Retaliatory Discharge," "Wrongful Termination," Or "Unlawful Discharge."**

The complaint states that Count I alleges "wrongful termination." (Cplt. ¶¶ 14-24). Plaintiff's Initial Status Report states that she alleges "retaliatory discharge" and "unlawful termination." (Dkt. 12, at 1(c)). But plaintiff has not stated a cognizable cause of action for any of these so-called "claims."

*First*, Illinois law does not recognize a state law claim for "retaliatory discharge" based on the rights set forth in the FMLA. Federal district courts in Illinois have concluded that the Illinois Supreme Court would refuse to extend the tort of retaliatory discharge to include claims based on the FMLA because the FMLA is concerned primarily with private interests. *See Smith v. MGM Resorts Int'l*, 2016 U.S. Dist. LEXIS 167099, 2016 WL 7049062, at *6 (N.D. Ill. Dec. 5, 2016); *Sullivan v. Progressive Cas. Ins. Co.*, 2004 U.S. Dist. LEXIS 14322, 2004 WL 1687123, at *6 (N.D. Ill. July 27, 2004); *Callozzo v. Office Depot, Inc.*, 1998 U.S. Dist. LEXIS 2706, 1998 WL 111628, at *3 (N.D. Ill. Mar. 6, 1998); *Dormeyer v. Comerica Bank—Illinois*, 1997 U.S. Dist. LEXIS 10260, 1997 WL 403697, at *1 (N.D. Ill. July 15, 1997). Therefore, any non-pleaded claim for "retaliatory discharge" would fail as a matter of law.

*Second*, any claim for "wrongful termination" fails as a matter of law because "wrongful termination" is treated the same as "retaliatory discharge" under Illinois law. *See Farlin v. Library Store, Inc.*, 2010 U.S. Dist. LEXIS 34924, *8 (C.D. Ill. 2010) (Illinois common law of "wrongful termination" is pleaded when "plaintiff states a valid claim for retaliatory discharge" and "only if she alleges that she was (1) discharged; (2) in retaliation for her activities; and (3) that the discharge violates a clear mandate of public policy") (citing *Hinthorn v. Rolan''s of Bloomington, Inc.*, 119 Ill. 2d 526, 519 N.E.2d 909, 911, 116 Ill. Dec. 694 (Ill. 1988)).

*Third*, defendant can find no independent cause of action in Illinois for "unlawful termination," and therefore, to the extent plaintiff claims such "unlawful termination" as an independent cause of action, it fails as a matter of law.

## II. Any Purported ADA Claim Should Be Dismissed Because Plaintiff Failed To Plead The Required Elements Of An ADA Violation.

To the extent that plaintiff asserts a claim for retaliation under the ADA, her complaint fails to plead any of the required facts. A claim for retaliation pursuant to the ADA requires

allegations that: (1) the plaintiff engaged in a statutorily protected activity; (2) she suffered an adverse employment action; and (3) there is a causal link between the protected activity and the adverse action. *Alamo v. Bliss*, 864 F.3d 541, 555 (7th Cir. 2017). Here, plaintiff fails to plead that she engaged in *any* protected activity under the ADA. Plaintiff does not claim that she took a medical leave pursuant to the ADA, but rather that she took a medical leave pursuant to the FMLA. (Cplt. ¶¶ 18, 20-21, 24). Plaintiff did not even cite the ADA in her complaint, which means she did not provide defendant Yelp notice of an ADA claim. *Brooks*, 578 F.3d at 581 (allegations in the complaint must "provide sufficient notice to defendants of the plaintiff's claim").

Nor has plaintiff alleged any of the required facts for a claim of ADA discrimination: (1) she did not allege that she is disabled within the meaning of the ADA; (2) she did not allege she is qualified to perform the essential functions of the job with or without accommodation; and (3) she did not allege she has suffered an adverse employment action because of a disability. *Timmons v. General Motors Corp*., 469 F.3d 1122, 1127 (7th Cir. 2006) (listing elements for *prima facie* case of ADA discrimination). Indeed, plaintiff fails to allege a specific disability within the meaning of the ADA, which is required in pleading an ADA claim to give the defendant fair notice of plaintiff's claim. *Tate v. SCR Medical Transp*., 809 F.3d 343, 345 (7th Cir. 2015) ("The defendant in a disability discrimination suit does not have fair notice when the plaintiff fails to identify his disability."). It is not enough to say that plaintiff suffered from a "serious health condition" and took "medical leave." (Cplt., ¶¶ 7, 18, 20); *Id.*; *Scheidt v. Floor Covering Assocs.*, 2018 U.S. Dist. LEXIS 167480, *23-24 (N.D. Ill. 2018) ("Although Plaintiff's doctor certified that she had a 'serious health condition' as the term is defined in the FMLA, that does not establish that Plaintiff's symptoms constitute a 'disability' as the term is defined in the ADA.") (citing *Burnett v. LFW Inc.*,

472 F.3d 471, 483 (7th Cir. 2006)). Therefore, the plaintiff has not sufficiently pleaded any ADA claim.

### III. Any Purported Race Discrimination Claim Should Be Dismissed Because Plaintiff Failed To Plead The Required Elements Of A Title VII Violation.

A plaintiff alleging employment discrimination under Title VII on the basis of race may generally allege the defendant's intent. *EEOC v. Concentra Health Servs.*, 496 F.3d 773, 781 (7th Cir. 2007). But here, plaintiff fails to meet even that simple standard. Nowhere in the complaint does plaintiff allege that she was terminated because of her race. Plaintiff does not allege her race. In fact, the complaint does not use the word "race" at all and there are no allegations of racial discrimination.

Likewise, plaintiff fails to plead a claim for retaliation based on race. A claim for retaliation pursuant to Title VII requires a pleading that: (1) the plaintiff engaged in a statutorily protected activity; (2) she suffered an adverse employment action; and (3) there is a causal link between the protected activity and the adverse action. *See, e.g., Lugo v. IBEW Local #134*, 175 F. Supp. 3d 1026, 1040 (N.D. Ill. 2016) (granting employer's motion to dismiss where plaintiff's complaint did not contain an "inference, or even suggestion, that any employment decision made by his supervisor was based on racial animus").

Again, here plaintiff alleges no "statutorily protected activity" related to her race (indeed she alleges nothing about her race), and any such claim for Title VII retaliation should be dismissed.

## CONCLUSION

For the foregoing reasons, the complaint should be dismissed in its entirety.

Respectfully submitted,

/s/ Stephanie A. Scharf
Stephanie A. Scharf
Suzanne Milne Alexander
SCHARF BANKS MARMOR LLC
333 West Wacker Drive, Suite 450
Chicago, IL 60606
Tel. 312-726-6000
sscharf@scharfbanks.com
salexander@scharfbanks.com

*Counsel for Defendant Yelp Inc.*