**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF ILLINOIS, EASTERN DIVISION**

| | | |
|---|---|---|
| KIRBY SMITH, | ) | |
| | ) | |
| Plaintiff, | ) | No.  20 cv 1166 |
| | ) | |
| v. | ) | Judge Manish S. Shah |
| | ) | |
| YELP INC., | ) | Magistrate Judge Maria Valdez |
| | ) | |
| Defendant. | ) | |

**DEFENDANT YELP INC.'S MEMORANDUM IN SUPPORT OF ITS RULE 12(b)(6)**
**MOTION TO DISMISS PLAINTIFF'S SECOND AMENDED COMPLAINT**

This is plaintiff Kirby Smith's third try at pleading cognizable claims against Yelp and her latest effort deserves only one result: dismissal with prejudice.  The second amended complaint attempts but fails to allege FMLA interference under 29 U.S.C. § 2615(a)(1) (Count I) and FMLA retaliation under 29 U.S.C. §2615(a)(2) (Count II).  Plaintiff's allegations show that Yelp granted Plaintiff FMLA leave, and that she was on leave for nearly six weeks without incident when her own intervening conduct caused Yelp to terminate her employment.  Specifically, plaintiff sent several text messages to a Yelp employee threatening physical harm against two Yelp employees (as well as one non-employee).  The FMLA does not immunize plaintiff from the consequences of her serious breaches of Yelp's employment policies against violence, nor can those consequences rise to the level of stating a claim for FMLA interference or FMLA retaliation. Additionally, plaintiff admits that she used her FMLA leave to take a vacation to Thailand rather than for the intended FMLA purpose of receiving medical treatment, which is a second independent basis for termination of her employment.  Thus, on either ground, Yelp had a legitimate reason to terminate plaintiff's employment and cannot be held liable for either

interference with FMLA leave or FMLA retaliation.  For these reasons, and as further explained below, Counts I and II should be dismissed.

## FACTS RELEVANT TO THIS MOTION TO DISMISS

The following facts are alleged in the second amended complaint ("Sec. Am. Cmplt.," Dkt 23).  Plaintiff worked for Yelp in Chicago as a Junior Account Executive from Feb. 5, 2018 through May 3, 2019.  (*Id.* ¶ 9).

On January 17, 2019, plaintiff requested paid time off ("PTO") for a vacation to Thailand. (*Id.* ¶ 11).  Plaintiff's PTO request was denied because she had already used all of her available PTO.  (*Id.* Ex. 1, Dkt. 23-1).  After the denial, plaintiff applied for a medical leave of absence under the FMLA to be taken from March 11, 2019 through June 3, 2019.  (Sec. Am. Cmplt. ¶¶ 16, 18).  This medical leave was intended to allow plaintiff to get "continued treatment including in person doctor visits" for her sciatica.  (*Id.* ¶ 17; *see also* ¶ 36 and Ex. 3 (Dkt. 23-6)).  Defendant Yelp approved plaintiff's request for  FMLA leave.  (*Id.* ¶ 22).

Plaintiff took FMLA leave beginning March 11, 2019.  (*Id.*).  On April 16, 2019, plaintiff "went to Thailand" for "a vacation."  (*Id.* ¶¶ 23, 30).  While plaintiff was "on vacation," Yelp was informed that plaintiff sent text messages to a coworker in which plaintiff threatened violence against two other Yelp employees.  (*Id.* ¶¶ 25, 28).

Specifically, on April 23, 2019, Yelp employee Shaina received text messages from the plaintiff in which plaintiff threatened violence against Yelp employees Madeline and Faye.[1] Declaration of Lauren Herzog, attached hereto as Ex. A, at ¶ 4.  Plaintiff also threatened violence

---

[1] In the interests of protecting their privacy, Yelp submits only the first names of plaintiff's targets.

against Faye's fiancé (not a Yelp employee). *Id.* Plaintiff's text messages included the following statements:

- "I'm selling tickets to a one hitter quitter boxing match!! Me and Madeline. Omg if and when I see her I'm punching her ass onsite."

- "She always said slick shit to me at work and I always wanted to[] punch her ass."

- "IT WAS Fayes fiance, Maira told me, guess what, they live across the street from me, should I hit Faye her Fiance or both when I see them."

- "don't fuck wit me and my money bc you gunna get that hood [n*] Jai" [*racial slur has been removed from this brief, it is in the text copies attached to this Motion].[2]

- "Faye and Madeline fucked up. Imma keep quiet, I'm not gunna let them know."[3]

Plaintiff alleges that she sent text messages (Sec. Am. Cmplt., ¶¶ 28, 59), although she now tries to excuse them as sent "in jest." (*Id.*, ¶ 28).

A senior employee from the personnel department investigated the threatening text messages and made several efforts to contact plaintiff "to discuss the issues" "including by telephone on April 29, April 30, May 1 and May 2, 2019." (Sec. Am. Cmplt., Ex. 6, Dkt. 23-6, at

---

[2] Plaintiff went by the first name "Jai" while she worked at Yelp. *See* Exhibit A to this Motion, Declaration of Lauren Herzog, ¶ 4.

[3] A copy of the text messages is attached to Exhibit A to this Motion, Declaration of Lauren Herzog, which attests to the receipt by Yelp of the texts. For purposes of this motion to dismiss, the actual language of plaintiff's texts are treated as part of the complaint. *See e.g.*, *Menominee Indian Tribe of Wis. v. Thompson*, 161 F.3d 449, 456 (7th Cir. 1998) (documents attached to a motion to dismiss are deemed part of the pleadings if they are referred to in the plaintiff's complaint and are central to his claim); *Wright v. Associated Ins. Cos.*, 29 F.3d 1244, 1248 (7th Cir. 1994) (same); *Adams v. City of Indianapolis*, 742 F.3d 720, 729 (7th Cir. 2014) ("It is . . . well-settled in this circuit that 'documents attached to a motion to dismiss are considered part of the pleadings if they are referred to in the plaintiff's complaint and are central to his claim.'").

2, 4; Sec. Am. Cmplt. ¶ 29). On May 3, 2019, when plaintiff answered her telephone, plaintiff "refused to answer" Yelp's questions and "hung up" on the Yelp employee. (*Id*., Ex. 6, at 3). Plaintiff alleges that she directed Yelp to speak with her doctors. (Sec. Am. Cmplt. ¶ 29, 27). Plaintiff does not—and cannot—allege why or how her doctors could explain the text messages threatening her Yelp co-workers and their loved ones.

After that call, Yelp sent the plaintiff an email detailing what its investigation had found. Yelp terminated plaintiff's employment because Yelp had "obtained copies of communications you sent where you threaten to physically harm several of your colleagues because you believe they shared information about your trip to Thailand with your manager or others at Yelp." (Ex. 6, Dkt. 23-6, at 2). Plaintiff's threats of violence to Yelp employees were "extremely troubling" as Yelp has a "zero-tolerance policy for engaging in or threatening violence at any time, whether at work or outside of work." (*Id*.).

Yelp also expressed to plaintiff a "serious concern" that plaintiff had been "dishonest regarding her medical leave of absence." (*Id.,* Ex. 6, at 1). This concern was based on "documentation from [plaintiff's] medical provider provided in relation to [her] leave and states that [plaintiff] cannot perform work due to sciatica and …[is] restricted from sitting and bending." (*Id*.). Although her doctor stated that she could not sit or bend, Yelp understood that plaintiff "took a vacation to Thailand . . . which almost certainly would have required [plaintiff] to sit and bend for long periods of time." (*Id*.). Plaintiff had "previously requested to take [this vacation] using PTO, but did not have sufficient PTO." (*Id*.). Yelp's investigation of the circumstances of plaintiff's medical leave was in progress, albeit hindered by plaintiff's lack of communication, when her text messages threatening violence surfaced. (*Id*.) Yelp asked plaintiff to respond by

4:30 p.m. to propose times when plaintiff would be available to talk. (*Id*. at 2). Plaintiff did not respond. (*Id*. at 3).

Based on its investigation, Yelp informed plaintiff by email on May 3, 2019 that her conduct "violates Yelp's policies, including our policies regarding honest and ethical conduct and our policy against violence." (*Id.* at 3, 4). Yelp also informed plaintiff that her employment was terminated "effective immediately." (*Id*. at 4).

### STANDARD FOR A MOTION TO DISMISS PURSUANT TO RULE 12(b)(6)

Under Fed. R. Civ. P. 12(b)(6), a complaint must contain fact allegations that "'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). Fed. R. Civ. P. 8(a)(2) requires a factual "'showing' rather than a blanket assertion of relief." 550 U.S. at 555 n.3 (quoting Fed. R. Civ. 8(a)(2)). A "formulaic recitation of the elements of a cause of action will not do." *Id.* at 555. Pleading a complaint "demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation." *Id*.

In ruling on a motion to dismiss, "courts must accept a plaintiff's factual allegations as true, but some factual allegations will be so sketchy or implausible that they fail to provide sufficient notice to defendants of the plaintiff's claim." *Brooks v. Ross*, 578 F.3d 574, 581 (7th Cir. 2009). Factual allegations are not adequate when they are "abstract recitations of the elements of a cause of action or conclusory legal statements." *Id*.

Plaintiff's text messages are considered part of the pleadings for purposes of this motion to dismiss. *See Menominee Indian Tribe of Wis. v. Thompson*, 161 F.3d 449, 456 (7th Cir. 1998) (documents attached to a motion to dismiss are deemed part of the pleadings if they are referred to in the plaintiff's complaint and are central to his claim); *Wright v. Associated Ins. Cos.*, 29 F.3d

1244, 1248 (7th Cir. 1994) (same); *Adams v. City of Indianapolis*, 742 F.3d 720, 729 (7th Cir. 2014) ("It is . . . well-settled in this circuit that 'documents attached to a motion to dismiss are considered part of the pleadings if they are referred to in the plaintiff's complaint and are central to his claim.'"); *188 LLC v. Trinity Indus., Inc.*, 300 F.3d 730, 735 (7th Cir. 2002) ("Because [Defendant] attached a copy of the release to its motion to dismiss, and because [Plaintiff's] complaint repeatedly referenced the release, it was proper for the district court to consider the text of the release in dismissing this case."). Here, plaintiff's text messages are referred to in the complaint many times (Sec. Am. Cmplt. ¶¶ 25, 27, 28, 29, 30, 48, 59, 60, 61, 63, 66) and are central to the claims of FMLA interference and retaliation.

Although plaintiff cited a number of legal decisions in the second amended complaint, the recitation of legal conclusions in a complaint should be disregarded on a motion to dismiss. *McCauley v. City of Chicago*, 671 F.3d 611, 616-17 (7th Cir. 2011).

## ARGUMENT

### I.  Count I Fails To Plead FMLA Interference.

"To plead an [FMLA] interference claim, a plaintiff must show that (1) she was eligible for FMLA protection; (2) her employer was covered by the FMLA; (3) she was entitled to take leave under the FMLA; (4) she gave her employer sufficient notice of her intent to take leave; and (5) her employer denied FMLA benefits to which she was entitled. *Righi v. SMC Corp.*, 632 F.3d 404, 408 (7th Cir. 2011); *Mattern v. Panduit Corp.*, 2011 U.S. Dist. LEXIS 118057, *20 (N.D. Ill 2011) (FMLA interference claim dismissed because plaintiff was never denied benefits); *Kohls v. Beverly Enters. Wis., Inc.*, 259 F.3d 799, 804 (7th Cir. 2001) (FMLA interference claim dismissed because plaintiff was not entitled to any FMLA benefits). Here, plaintiff has not pleaded the fifth

essential element of an interference claim because she does not and cannot plead either that she was denied FMLA benefits or that she was entitled to such benefits.

### A. Plaintiff Was Not Denied FMLA Leave.

In *Mattern*, plaintiff's FMLA claim was dismissed pursuant to Fed. R. Civ. P. 12(b)(6) where the employer granted plaintiff's request for FMLA leave, plaintiff took FMLA leave, and plaintiff was terminated before she came back from FMLA leave. *Mattern,* 2011 U.S. Dist. 118057, at *5, 20 ("Amended Complaint contains no allegations that she was *denied* FMLA benefits at any time during her employment") (emphasis in original).

That is exactly the situation here. Plaintiff plainly alleges that she asked for and received FMLA leave. (Sec. Am. Cmplt. ¶¶ 16, 22). Only much later, after plaintiff was on FMLA leave for almost two months, was plaintiff's employment terminated – not because she took FMLA leave but because of the several violent threats she made, in writing, against two Yelp employees.

### B. As A Matter Of Law, Plaintiff Cannot Sustain A Claim For Interference With FMLA Rights Because She Alleges Her Violations Of Yelp's Employment Policies.

As set forth in *Kohls*, 259 F.3d at 804-805, an employee is not entitled to flout employment policies simply because she is on FMLA leave: "The substantive right [to reinstatement after FMLA leave] provided in § 2614(a)(1), however, shall not be construed to entitle any restored employee to . . . any right, benefit, or position of employment other than any right, benefit or position to which the employee would have been entitled had the employee not taken the leave." *Kohls,* 259 F.3d at 804 (citing 29 U.S.C. § 2614(a)(3)(B)). Being on leave does not prevent termination for workplace violations that warrant termination: "Because [employer] could terminate [employee] for this violation while he was at work, it could also terminate him for it while he was on leave." *Crouch v. Whirlpool Corp.*, 447 F.3d 984, 986-87 (7th Cir. 2006) (FMLA

rights did not protect employee from being fired for violating the employer's leave policies). *See also Clay v. City of Chi. Dep't. of Health,* 143 F.3d 1092, 1094 (7th Cir. 1998) (employer "did not violate the Family and Medical Leave Act by not reinstating and indeed discharging [employee] because [employer] could have discharged her for poor performance even if she had not taken the final leave").

Here, plaintiff squarely pleads facts that warrant termination, regardless of her FMLA leave, for two independent reasons: (1) she threatened violence against co-workers, and (2) she did not use her FMLA leave for its intended purpose.

*First*, Yelp terminated plaintiff's employment because she sent text messages threatening violence to Yelp employees. Plaintiff's second amended complaint shows not only that that she sent the threatening text messages, but also that the text messages caused the termination of her employment. (Sec. Am. Cmplt., ¶ 28 and Ex. 6, 1-4). As *Kohl* and *Crouch* make clear, the fact that plaintiff was on FMLA when she sent the threatening text messages does not mean that Yelp is prohibited from terminating her for violating Yelp's policies intended to maintain a non-violent workplace. Nor is plaintiff saved by her newest allegation—which she makes for the first time in the second amended complaint—that she made the violent threats "in jest." *See Palesch v. Missouri Comm'n on Human Rights*, 233 F.3d 560, 568 (8th Cir. 2000) (summary judgment for employer on disparate treatment claim upheld even though the employee contended her threat of violence was "a joke" because "the seriousness of the statement made was more than adequate justification for her employer's response, particularly in view of recent experience nationally with violence in the workplace"). The notion that plaintiff was only joking lacks plausibility, inasmuch as she sent five different threating messages directed against three different targets. It is also irrelevant. Yelp's workplace policy, like other sensible workplace policies, contains no exception

for an employee who repeatedly threatens violence against her co-workers and then, for the first time nearly two years later, claims that her threats were "in jest." For this reason alone, Plaintiff fails to state a claim for FMLA interference.

*Second*, plaintiff used her FMLA leave to take a vacation to Thailand when she had not accrued enough PTO to take a vacation. (*Id.* ¶¶ 11, 12, 23). The FMLA return-to-work provision, 29 U.S.C. § 2614(a)(1), applies only to employees on leave from work "for the intended purpose of the leave." An employer is under no obligation to reinstate an employee who misuses disability leave. *Crouch*, 447 F.3d at 986. Here, after Yelp denied her request for vacation time, plaintiff applied for FMLA leave, purportedly to obtain "continued treatment" for her sciatica and her inability to sit, stand and walk (Sec. Am. Cmplt. ¶¶ 16; 10, 15, 18). Then, within weeks of starting FMLA leave, she went to Thailand for a "vacation." (*Id.* ¶ 23, 30). Plaintiff plainly did not use her FMLA leave for the "intended purpose of the leave" (to obtain treatment for her sciatica), and the FMLA does not protect the plaintiff from being fired for violating an employer's leave policies. *Crouch*, 447 F.3d at 986-87.

In short, plaintiff's pleadings show that she is not entitled to the FMLA benefit of reinstatement, and cannot state a claim for interference with such reinstatement. Plaintiff was never denied the FMLA leave she requested, and she cannot overcome her own admissions that she threatened co-workers with violence and that she did not use her FMLA leave for its intended purpose. Either violation of Yelp's policies supports dismissal and defeats a claim of interference. Therefore, Count I for FMLA interference should be dismissed.

## II.    Count II Fails To Plead FMLA Retaliation.

Plaintiff has likewise failed to allege an FMLA retaliation claim. To do so requires pleading that the plaintiff (1) engaged in statutorily protected activity, (2) suffered an adverse

action, and (3) the protected activity *caused* the adverse action – the retaliation component. *Ames v. Home Depot U.S.A., Inc*., 629 F.3d 665, 670 (7th Cir. 2011). *See also Carter v. Chicago State Univ.,* 778 F.3d 651, 657 (7th Cir. 2015) (no evidence of retaliatory intent to show causation). Nor could she, because it was plaintiff's own conduct—her threats of violence against co-workers— that caused her termination. *Anders v. Waste Mgmt. of Wis., Inc*., 463 F.3d 670, 678 (7th Cir. 2006) (no retaliation when employer terminated an employee who threatened violence against his supervisor, even though he was on FMLA leave at the time). Moreover, even an "honest suspicion" that a plaintiff is misusing the leave is enough to defeat a retaliation claim. *Scruggs v. Carrier Corp*., 688 F.3d 821, 826 (7th Cir. 2012) (where employer had "honest suspicion" that employee submitted false paperwork and misused FMLA leave, employer did not violate FMLA by terminating employee); CFR 825.216(d) ("An employee who fraudulently obtains FMLA leave from an employer is not protected by FMLA's job restoration or maintenance of health benefits provisions."). While plaintiff pleaded that she engaged in statutorily protected activity when she took medical leave pursuant to the FMLA, she did not plead the required causal connection between her FMLA leave and her termination. To the contrary, she alleges facts showing two reasons why her termination had nothing to do with taking FMLA leave: plaintiff sent text messages that threatened violence to co-workers, and she did not use her FMLA leave for its intended purpose. Plaintiff also alleges Yelp's knowledge of these events, and she alleges Yelp's honest suspicion of her misuse of FMLA leave.

### A. Plaintiff Fails To Plead A Causal Connection Between Her FMLA Leave And Her Termination.

To show a causal nexus between a protected activity and an adverse employment action, a plaintiff must allege either direct facts or circumstantial evidence of retaliatory or discriminatory intent. *Carter,* 778 F.3d 651, 657 (7th Cir. 2015) (no direct evidence of retaliatory intent because

suspicious timing alone was not sufficient and no indirect evidence of retaliatory intent where plaintiff could not produce evidence of similarly situated individuals being treated better than him); *Johnson v. Cent. States Funds*, 2014 U.S. Dist. LEXIS 104445, *9 (N.D. Ill. 2014) (dismissing FMLA retaliation claim where plaintiff did not allege any discriminatory or retaliatory intent on the employer's part and several months passed between time of FMLA leave and adverse employment action). "Statements by subordinates normally are not probative of an intent to retaliate by the decisionmaker*." Gallagher v. Dart*, 2020 U.S. Dist. LEXIS 41985, *19 (N.D. Ill. 2020) (quoting *Long v. Teachers' Ret. Sys. of Ill*., 585 F.3d 344, 351 (7th Cir. 2009)). In the absence of alleging direct or circumstantial facts of retaliatory intent, an FMLA retaliation claim must be dismissed. *Johnson* 2014 U.S. Dist. LEXIS 104445, *9.

Here, the only allegation of retaliatory intent is a statement made by plaintiff's co-worker, Shaina, that she believed plaintiff was faking her injury. (Sec. Am. Cmplt. ¶ 21). But there is no allegation that the co-worker terminated plaintiff, was a member of Yelp management, or was involved in the decision to terminate plaintiff. To the contrary, plaintiff expressly alleges that a senior Yelp employee in the personnel department contacted her about her text messages threatening violence and her apparent dishonesty about her FMLA leave. (Sec. Am. Cmplt. ¶¶ 26-27 and Ex. 6). Plaintiff fails to allege any connection between Shaina's belief and the action taken by Yelp. A statement from a co-worker who did not supervise the plaintiff or terminate the plaintiff is not enough to plead causation. Therefore, plaintiff fails to plead a causal connection between her FMLA leave and her termination.

### B. Plaintiff Herself Alleges That She Sent Text Messages Threatening Violence Against Yelp Employees.

Plaintiff likewise fails to allege that her termination was causally related to her FMLA leave because she concedes that she threatened violence against co-workers – a legitimate reason

11

to terminate her employment. *See e.g., Scruggs*., 688 F.3d at 827; *Anders*, 463 F.3d at 678; *accord Palmer v. Circuit Court*, 117 F.3d 351, 352 (7th Cir. 1997) ("The [ADA] does not require an employer to retain a potentially violent employee. Such a requirement would place the employer on a razor's edge – in jeopardy of violating the Act if it fired such an employee, yet in jeopardy of being deemed negligent if it retained him and he hurt someone.").

Here, Yelp freely allowed plaintiff to take FMLA leave. Weeks *after* plaintiff's leave began, Yelp terminated plaintiff's employment. Plaintiff pleads that after Yelp learned of plaintiff's threatening text messages, Yelp attempted to communicate with plaintiff, but she rebuffed each and every one of Yelp's attempts. (Sec. Am. Cmplt., ¶¶ 27, 29, 58, and Ex. 6, at 2). These allegations show that plaintiff's use of FMLA leave did not, in fact, cause her termination. The time gap alone is enough to cut off any causal inference, and in addition it is clear that plaintiff's own threatening conduct left Yelp no choice but to terminate her—particularly since she would not communicate to Yelp management about the violent threats she made. Copies of the actual texts that plaintiff sent, shown in Exhibit A to this Motion, simply reinforce the point: there is no direct or circumstantial evidence of retaliatory intent.

Nor can retaliatory intent be discerned from plaintiff's assertion that the vacation to Thailand was the reason for her termination. (Sec. Am. Cmplt., ¶ 30). To state an FMLA retaliation claim, plaintiff's activity must be "statutorily protected." *Ames*, 629 F.3d at 670. Taking a vacation, however, is not protected by the FMLA, and plaintiff offers no citation to the FMLA to support that assertion. In any event, Yelp did not disturb plaintiff's FMLA leave until it learned that plaintiff had threatened violence against two Yelp employees, as well as against a third non-employee. Only at that time, and only after attempting to communicate with plaintiff for five straight days without success, did Yelp terminate the plaintiff's employment. *Scrugs*, 688 F.3d at

827 (only after employer received evidence of potential misconduct was the plaintiff terminated; the reason for employee's termination was therefore not the same as his protected activity).

While the FMLA protects against certain types of discrimination, it is not a free pass to threaten violence. "The FMLA was designed to help working men and women balance the conflicting demands of work and personal life, it was not intended to excuse violence in the work place." *Anders*, 463 F.3d at 678. Consistent with multiple Seventh Circuit decisions, Yelp had no obligation to allow a potentially violent employee, like plaintiff here, to remain an employee. Such a result would violate any notion of protecting employees from workplace violence.

### C.   Plaintiff Plainly Alleges That She Did Not Use Her Medical Leave For Its Intended Purpose.

There is a second independent reason why the second amended complaint defeats the element of causation: plaintiff alleges that she used her FMLA leave, which was intended to obtain treatment for sciatica (Sec. Am. Cmplt. ¶ 36 and Ex. 3), to take a vacation to Thailand. (*Id.* ¶ 18). Not only does plaintiff clearly allege that she used FMLA leave to take a vacation to Thailand (*Id.*, ¶¶ 23, 30, 36), she also alleges that Yelp "believed plaintiff was being dishonest about her injury." (*Id.*, ¶ 30).

Plaintiff has squarely alleged that Yelp had an honest suspicion that she had misused her FMLA leave to take a vacation. (*Id.*, Ex. 6, 1-4). Yelp investigated this suspicion. (*Id.*, at 3-4). This investigation included at least five attempts to contact plaintiff, and in which plaintiff rebuffed each effort. (*Id.* at 3-4; Sec. Am. Cmplt. ¶ 29). When plaintiff finally answered one of Yelp's calls, she refused to answer Yelp's questions regarding her "vacation" and regarding the text messages threatening violence, and hung up on the Yelp representative. (*Id.,* Ex. 6, at 1). According to plaintiff's second amended complaint, Yelp then concluded that plaintiff's conduct

13

"violated Yelp's policies," including Yelp's "policies regarding honest and ethical conduct." (*Id.* at 4).

Just as in *Crouch*, where the employer had an honest suspicion that the employee had used FMLA leave to take a vacation that had been denied, the employer was entitled to terminate that employee and Yelp was entitled to do so here. *See also Kariotis v. Navistar Int'l Transp. Corp.*, 131 F.3d 672, 681 (7th Cir. 1997) (finding that if the employer had to prove more than an honest suspicion simply because the employee was on leave, the employee would therefore enjoy "greater rights" than similarly situated employees who were not on leave: "The statute and the regulations rule out that inequity."). Given the alleged sequence of events—that is plaintiff's (1) exhaustion of her PTO; (2) request for extra PTO to take an additional extended vacation to Thailand (which Yelp denied); (3) request for FMLA leave for sciatica (which Yelp granted); (4) vacation to Thailand; and (5) refusal to discuss the circumstances of her vacation—Yelp was entitled to terminate plaintiff for its "honest suspicion" of misuse of FMLA leave and violating leave policies.

Nor do plaintiff's allegations concerning the sufficiency of Yelp's investigation do anything to state a claim of FMLA retaliation. (*Id.*, ¶¶ 47, 66). The FMLA does not require Yelp to conduct a more thorough investigation. *Scruggs*, 688 F.3d at 826 ("Although Carrier could have conducted a more thorough investigation, as Scruggs fervently argues, it was not required to do so."). As discussed above, an employer's "honest suspicion" is enough to sustain the termination, and the second amended complaint itself alleges those honest suspicions in detail. (Sec. Am. Cmplt., Ex. 6, pg. 1-4). In short, terminating plaintiff's employment was a legitimate response to plaintiff's own actions, which she pleaded in the second amended complaint, therefore defeating a claim for FMLA retaliation.

For these reasons, Count II should be dismissed.

14

## CONCLUSION

For the foregoing reasons, the second amended complaint should be dismissed in its entirety.

Respectfully submitted,


/s/ Stephanie A. Scharf
Stephanie A. Scharf
Suzanne Milne Alexander
SCHARF BANKS MARMOR LLC
333 West Wacker Drive, Suite 450
Chicago, IL 60606
Tel. 312-726-6000
sscharf@scharfbanks.com
salexander@scharfbanks.com

*Counsel for Defendant Yelp Inc.*

## CERTIFICATE OF SERVICE

I certify that on January 22, 2021, I caused to be filed the foregoing DEFENDANT YELP INC.'S MEMORANDUM IN SUPPORT OF ITS RULE 12(B)(6) MOTION TO DISMISS PLAINTIFF'S SECOND AMENDED COMPLAINT using the Court's CM/ECF system, which will send e-mail notification of the filing to all counsel of record. This document is available for viewing and downloading via the CM/ECF system.

/s/ *Stephanie A. Scharf*

Cierra Norris
Edward Speights
THE LAW OFFICE OF C.N NORRIS, LLC
55 E. Monroe St, Suite 3800
Chicago, IL 60603
234-525-8833
cierra@cnnorrislaw.com
edward@cnnorrislaw.com
*Counsel for Kirby Smith*