UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| KIRBY SMITH,<br><br>        Plaintiff,<br><br>    v.<br><br>YELP, INC.,<br><br>        Defendant. | No. 20 CV 1166<br><br>Judge Manish S. Shah |

**MEMORANDUM OPINION AND ORDER**

Defendant Yelp denied its employee, plaintiff Kirby Smith, time off to take a vacation to Thailand. A few months later, Smith's doctor diagnosed her with sciatica and a herniated disc in her back, affecting her ability to sit for long stretches. Yelp approved her for leave under the Family and Medical Leave Act. While on FMLA leave, Smith took the trip to Thailand. After her coworkers discovered her travel and reported it to management, Smith texted a colleague that she would like to punch those coworkers. Yelp management got a hold of those texts, and fired Smith for dishonesty regarding her medical leave and violating Yelp's antiviolence policy. Smith sues Yelp for FMLA interference and retaliation, and Yelp moves to dismiss for failure to state a claim. For the reasons discussed below, Yelp's motion is granted.

**I.     Legal Standards**

To survive a motion to dismiss under Rule 12(b)(6), a complaint must state a claim upon which relief may be granted. Fed. R. Civ. P. 12(b)(6). The complaint must contain "sufficient factual matter, accepted as true, to 'state a claim to relief that is

plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). In reviewing a motion to dismiss, I construe all factual allegations as true and draw all reasonable inferences in the plaintiff's favor. *Calderone v. City of Chicago*, 979 F.3d 1156, 1161 (7th Cir. 2020). In resolving a 12(b)(6) motion, I may consider allegations in the complaint, documents attached to the complaint, documents that are both referred to in the complaint and central to its claims, and information that is subject to proper judicial notice. *Reed v. Palmer*, 906 F.3d 540, 548 (7th Cir. 2018) (quoting *Geinosky v. City of Chicago*, 675 F.3d 743, 745 n.1 (7th Cir. 2012)).

## II.   Background

Smith worked as a Junior Account Executive for Yelp. [23] ¶ 9.[1] She received promotions and was never written up for any negative behavior. [23] ¶ 9. In January 2019, Yelp denied Smith's request to take time off for a vacation to Thailand in April, citing her lack of accrued paid time off. [23] ¶ 11. Yelp suggested that Smith either request the time when she had accumulated enough time to cover the vacation, resign and reapply after her trip, or forgo the trip. [23] ¶ 12.

While working for Yelp, Smith developed severe sciatica issues, preventing her from sitting or standing for long periods of time and affecting her ability to walk. [23] ¶ 10. In March 2019, her primary care doctor diagnosed her with acute midline lower back pain with bilateral sciatica, and referred her to an occupational or physical

---

[1] Bracketed numbers refer to entries on the district court docket. Referenced page numbers are taken from the CM/ECF header placed at the top of filings. Facts are taken from the second amended complaint and the relevant exhibits, as explained below. *See* [23].

2

therapist. [23] ¶ 15. A week later, Smith filled out an FMLA medical leave certification form. [23] ¶ 16. On the FMLA form, Smith's doctor affirmed that she needed to stop work immediately, and that she would be incapacitated until June 3, 2019. [23] ¶ 18. He certified that her condition was chronic, and she would have to be absent for periods of time while she received treatment, including doctor visits, medication, and therapy. [23] ¶ 17. The next day, Smith went to the emergency room, where doctors performed a spine lumbar test and prescribed her three medications. [23] ¶ 19. A few weeks later, Smith's primary care doctor diagnosed her with a lumbar herniated disc and referred her to a neurological surgeon. [23] ¶ 20. Yelp approved Smith's FMLA leave from the beginning of March through June 3. [23] ¶ 22.

In April 2019, Smith went to Thailand. [23] ¶ 23. Smith's coworkers reported her trip to Yelp's management, prompting Smith to exchange text messages with her coworker about the colleagues who had reported her. [23-6] at 2. Smith texted that she was "selling tickets to a one hitter quitter boxing match" between her and a third coworker; "if and when I see her I'm punching her ass onsite." [28-1] at 5. Smith continued, "She always said slick shit to me at work and I always wanted to[] punch her ass." [28-1] at 5. In the same series of messages, Smith referenced another coworker and her fiancé, writing, "they live across the street from me … should I hit [the coworker] her fiancé or both when I see them." [28-1] at 6.[2]

---

[2] Yelp attached copies of the text messages to its motion to dismiss. I consider them because they are referenced throughout Smith's complaint and central to her claims. [23] ¶¶ 25, 27–30. Smith does not object to consideration of the text messages, and she references them in her response brief.

3

The recipient of the texts reported them to Yelp management. [23] ¶ 25. Between April 29 and May 3, Yelp called Smith multiple times to investigate FMLA abuse and the texts. [23] ¶¶ 26, 29, 42; [23-6] at 2. When Smith answered on May 3, she directed Yelp to speak to her doctors. [23] ¶¶ 27, 29, 42. Yelp didn't ask her about the texts during the conversation. [23] ¶¶ 26, 29. The next day, Yelp emailed Smith expressing concern that Smith had been "dishonest" about her medical leave. [23] ¶ 26; [23-6] at 1. Specifically, though Smith's doctor certified that she could not work because she couldn't sit, her trip to Thailand "almost certainly would have required [her] to sit and bend for long periods of travel time." [23] ¶ 26. The Yelp representative stated that when she had tried to ask Smith about her trip on the phone the day before, Smith had refused to answer questions about it. [23] ¶ 26.[3]

Further, Yelp had a "zero-tolerance policy for engaging in or threatening violence at any time, whether at work or outside of work." [23-6] at 2. The representative said she hadn't asked about the texts on the phone the day before because Smith had hung up after being questioned about her FMLA leave; Smith denies that she hung up. [23] ¶ 27. Yelp sent the email at 2:40 p.m. and gave Smith until 4:30 to respond to set up a time to discuss the texts; when Smith didn't respond, Yelp sent another email firing her. [23] ¶ 27; [23-6] at 2–3. Yelp said Smith had violated its policies against dishonesty, unethical conduct, and violence. [23-6] at 3.

---

[3] Though Smith includes only excerpts from the email in the body of her complaint, I consider the email in full because she attached it to the complaint. [23-6].

4

**III.    Analysis**

Smith sues Yelp for FMLA interference and retaliation, and Yelp moves to dismiss for failure to state a claim. The FMLA makes it unlawful for an employer to "interfere with, restrain, or deny" an employee's exercise of any right provided under the Act. 29 U.S.C. § 2615(a)(1). To state a claim for FMLA interference, Smith must show that she was eligible for FMLA protection, her employer was covered by the FMLA, she was entitled to leave under the FMLA, she provided sufficient notice of her intent to take leave, and her employer denied or interfered with FMLA benefits to which she was entitled. *Preddie v. Bartholomew Consol. Sch. Corp.*, 799 F.3d 806, 816 (7th Cir. 2015). Only the fifth element is at issue here.

One of the rights the FMLA confers on employees is the right to reinstatement. That is, an employee on leave is entitled to return to the same position she had when her leave began. 29 U.S.C. § 2614(a)(1). But the "right to reinstatement is not absolute." *Goelzer v. Sheboygan Cty.*, 604 F.3d 987, 993 (7th Cir. 2010). The employee is only entitled to reinstatement, for example, if she takes leave "for the intended purposes of the leave." 29 U.S.C. § 2614(a)(1). An employer "is under no obligation to reinstate an employee who misuses disability leave." *Crouch v. Whirlpool Corp.*, 447 F.3d 984, 986 (7th Cir. 2006). An employer's "honest suspicion" that the employee wasn't using her medical leave for its intended purpose "is enough to defeat the employee's substantive rights FMLA claim." *Id.*; *Scruggs v. Carrier Corp.*, 688 F.3d 821, 825–26 (7th Cir. 2012).

Further, a plaintiff is not entitled to reinstatement if she "would have been fired regardless of whether she took the FMLA leave." *Goelzer*, 604 F.3d at 993; *see Vail v. Raybestos Prod. Co.*, 533 F.3d 904, 909 (7th Cir. 2008) ("The employee only gets the same employment terms she had when she left—nothing more."). An employer need not restore the employee to her former position if restoration would confer a benefit or position that the employee "would not have been entitled to if the employee had never left the workplace." *Goelzer*, 604 F.3d at 993 (quoting *Kohls v. Beverly Enters. Wisc., Inc.*, 259 F.3d 799, 805 (7th Cir. 2001)); *Cracco v. Vitran Exp., Inc.*, 559 F.3d 625, 636 (7th Cir. 2009).

Drawing all inferences in Smith's favor and taking all allegations in her complaint as true, Smith hasn't plausibly alleged that she was entitled to reinstatement. Because the complaint establishes that Yelp would have fired her over the text messages irrespective of her FMLA leave, and because Yelp genuinely suspected that she was misusing her FMLA leave, Smith has failed to state a claim against Yelp for interfering with her right to reinstatement.

As explained in the Yelp emails that Smith attached to her complaint, Yelp had a policy against threatening workplace violence, and Smith violated that policy by referencing punching two of her colleagues. I take Smith's allegation as true that the comments were empty threats, made in jest as a result of frustration with her coworkers. *See* [23] ¶ 27. Regardless of how she meant them, though, the texts violated Yelp's policy. Even viewed in the light most favorable to Smith, the complaint and exhibits establish that Yelp fired her because she violated the antiviolence policy.

6

That Smith happened to be on FMLA leave when she committed a fireable offense doesn't shield her from being fired. The only plausible inference on this complaint is that Yelp would have fired Smith based on her texts whether she was on FMLA leave or not. She hasn't plausibly alleged that she was entitled to return to her pre-FMLA leave job, despite violating Yelp's antiviolence policy.

Smith insists that Yelp relied on the text messages as a pretext for firing her— the real reason, she says, is because she took the trip to Thailand. But that allegation doesn't save her claim, because Yelp's belief that she traveled to Thailand is another reason why Smith hasn't plausibly alleged that she was entitled to her job back. It's plain from the face of the complaint that she didn't use her leave for its intended purpose. She took FMLA leave due to sciatica and a herniated disc, preventing her from sitting for long periods of time, then took a lengthy overseas flight. An employer only needs to have an honest suspicion that its employee misused her FMLA leave to defeat the employee's entitlement to reinstatement. *Vail*, 533 F.3d at 909. Even if the employer "could have conducted a more thorough investigation," it's not required to, *Scruggs*, 688 F.3d at 826, and the employer need not prove that the employee actually misused her leave—genuine suspicion is sufficient to preclude the employee's FMLA claims. *Id.*; *see also Kariotis v. Navistar Intern. Transp. Corp.*, 131 F.3d 672, 677 (7th Cir. 1997). Smith doesn't argue that Yelp mistakenly believed that she took a trip. She admits that she traveled to Thailand. Rather, she insists that Yelp can't police where she takes her FMLA leave—in other words, that her trip didn't conflict with the intended purpose of her leave. Traveling while on FMLA leave may be consistent

7

with the purpose of the leave under some circumstances. But here, where Smith took leave because she couldn't sit down for prolonged stretches, the only reasonable inference to be drawn is that sitting on a plane to Thailand was clearly inconsistent with the stated purpose of her FMLA leave. *See, e.g., Danek v. Cty. of Cook*, 2011 WL 5979880, at *6 (N.D. Ill. Nov. 29, 2011) (plaintiff "did not use his FMLA leave for its intended purpose, but instead traveled and took vacations"). Since the complaint establishes that Smith wasn't using her FMLA leave for its intended purpose, she hasn't plausibly alleged that she was entitled to reinstatement.

      Smith is right that whether an employer has an honest belief of FMLA abuse is typically a question of fact resolved at the summary judgment stage, and plaintiffs generally need not plead around an issue such as this one, which functions like an affirmative defense. *See Doe v. GTE Corp.*, 347 F.3d 655, 657 (7th Cir. 2003) (affirmative defenses do not justify dismissal on a Rule 12(b)(6) motion). But a plaintiff can "plead [her]self out of court" by admitting "all the ingredients of an impenetrable defense" in a complaint. *John K. Maciver Inst. for Pub. Pol'y, Inc. v. Schmitz*, 885 F.3d 1004, 1014 (7th Cir. 2018) (quoting *Xechem, Inc. v. Bristol-Myers Squibb Co.*, 372 F.3d 899, 901 (7th Cir. 2004)). Here, the pleadings establish the necessary elements: Yelp explained that its termination decision was based in part on Smith's dishonesty, and Smith admitted that she took a long flight on vacation while on medical leave with back issues. Those allegations and exhibits suffice to show that Yelp held a genuine belief that Smith was misusing her leave. That precludes her FMLA interference claim.

8

Smith's FMLA retaliation claim also fails. The FMLA makes it unlawful for an employer to "discharge or in any other manner discriminate against" an employee for opposing "any practice made unlawful" by the Act. 29 U.S.C. § 2615(a)(2). So to state a claim, Smith must plausibly allege that she engaged in protected activity, she suffered an adverse employment action, and a causal connection existed between the two. *Riley v. City of Kokomo*, 909 F.3d 182, 188 (7th Cir. 2018).

No one disputes that taking medical leave is a protected activity, nor that being fired is an adverse employment action. But Smith's claim appears to be that Yelp fired her in retaliation for taking her trip to Thailand, not for taking FMLA leave in the first place. *See* [23] ¶ 30 (alleging that Yelp was "really firing" Smith "because she went on vacation while on FMLA"); [30] at 9 (arguing that Yelp terminated Smith "in retaliation for her taking a trip to Thailand"). Taking a trip is not protected activity under the FMLA. The Act doesn't bar an employer from penalizing its employee for misusing leave—it bars an employer from penalizing its employee for taking FMLA leave. Smith's complaint alleges that Yelp approved her for FMLA leave without incident, and Yelp only fired her weeks into her leave after she committed two separate infractions. Even if Smith was relying on the leave itself as protected activity (not the trip), she hasn't alleged a causal link between her protected activity and her termination. The only reasonable inference the complaint supports is that Yelp fired Smith for sending text messages referencing violence and for misusing her medical leave, not for taking it.

### IV.  Leave to Amend

Ordinarily, leave to amend should be freely given unless amendment would be futile. *Pension Tr. Fund for Operating Eng'rs v. Kohl's Corp.*, 895 F.3d 933, 941 (7th Cir. 2018). Smith has already amended her complaint twice, and she had an opportunity to address the defects in her complaint after Yelp moved to dismiss her first amended complaint. The second amended complaint alleges the same set of facts, and Smith doesn't say what she would add to a third amended complaint to make her FMLA claims plausible. Further amendment at this point would be futile. All claims are dismissed with prejudice.

### V.  Conclusion

Yelp's motion to dismiss, [27], is granted. All claims are dismissed with prejudice. Enter judgment and terminate civil case.

ENTER:

_____
Manish S. Shah
United States District Judge

Date:  March 30, 2021